UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>　　　　Defendant. | Case No. 19-cv-04242-RS<br><br>**ORDER GRANTING MOTION TO TRANSFER** |

## I. INTRODUCTION

In June 2019, the United States Environmental Protection Agency ("EPA") published a rule updating the processes and guidelines by which it would manage Freedom of Information Act ("FOIA") requests. Organizational plaintiffs Ecological Rights Foundation ("EcoRights") and Our Children's Earth Foundation ("OCE") quickly brought this action averring that the new rule violates various provisions of the FOIA and the Administrative Procedure Act ("APA"). Within days, other plaintiffs had also brought litigation challenging the rule under similar statutory provisions in the United States District Court for the District of Columbia ("D.D.C."). The EPA now requests, pursuant to 28 U.S.C. § 1404(a), that the present case be transferred to D.D.C. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for November 7, 2019 is vacated. For the reasons set forth below, the motion is granted.

## II. BACKGROUND

EcoRights and OCE are both nonprofit environmental groups based in Northern California. They frequently submit FOIA requests to the EPA as part of their advocacy work. Earlier this year, the EPA promulgated a new rule updating how it would manage FOIA requests. *See* FOIA Regulations Update, 84 Fed. Reg. 30,028 (June 26, 2019) (codified at 40 C.F.R. § 2) ("the Rule"). The Rule was issued without notice-and-comment procedures by invoking an APA exception. It makes numerous changes to the EPA's processes and guidelines for FOIA requests, including: (1) centralizing all FOIA requests at the EPA's national headquarters, as opposed to its field offices; (2) allowing the Administrator of the EPA, a political appointee, to make final FOIA determinations; (3) setting the day the request is received as the presumptive search cut-off date for all FOIA requests; (4) withholding portions of requested records based on an internal determination that they are nonresponsive; and (5) changing certain regulatory language.

On July 24, 2019, plaintiffs sued in the Northern District of California averring that the Rule violates various provisions of the APA and the FOIA. Procedurally, plaintiffs argue, the Rule's promulgation without notice-and-comment procedures violates the APA and the FOIA, as the Rule does not fall squarely into either of the notice-and-comment exceptions. Substantively, according to plaintiffs, some of the changes that the Rule makes are unreasonable, arbitrary, capricious, and otherwise not in accordance with law, again violating both the APA and the FOIA.

The day before plaintiffs filed their lawsuit, organizational plaintiff Citizens for Responsibility and Ethics in Washington filed a similar lawsuit against the EPA in D.D.C. *Citizens for Responsibility and Ethics in Washington ("CREW") v. EPA*, No. 19-cv-02181 (D.D.C. filed July 23, 2019). The *CREW* complaint similarly challenges the Rule by averring violations of the APA's procedural and substantive requirements, i.e. that the Rule should have been promulgated pursuant to notice and comment and is arbitrary, capricious, and contrary to law, and of the FOIA's unlawful policy or practice provision. It highlights many of the same elements of the Rule as does the complaint in this case: the centralization requirement, the Administrator's final FOIA determination power, and the bypass of notice-and-comment procedures. The *CREW* complaint

ORDER GRANTING MOTION TO TRANSFER
CASE NO. 19-cv-04242-RS

also takes issue with parts of the Rule that the complaint in this case does not, for example the new power of EPA political appointees to delegate final FOIA determinations.

Finally, the same day that the present case was filed, plaintiffs Center for Biological Diversity and the Environmental Integrity Project filed yet another lawsuit, also in D.D.C., challenging the Rule. *Center for Biological Diversity ("CBD") v. EPA*, No. 19-cv-02198 (D.D.C. filed July 24, 2019). That complaint again stems from the promulgation of the Rule and avers violations of the APA and the FOIA's rulemaking requirements, as well as substantive violations of the APA. It mentions some of the same facts as the *CREW* complaint and the complaint in the present case—for example the centralization requirement—but also alleges facts that neither of the other complaints do: for example that the EPA has unlawfully bypassed APA and FOIA procedures in issuing other directives besides the Rule.

Less than two months after the complaint in this case had been filed—before the EPA had answered it—plaintiffs filed a Motion for Summary Judgment. The EPA then filed the present Motion to Transfer this case to D.D.C., or alternatively to stay it while the *CREW* and *CBD* proceedings are ongoing. The EPA has expressed an intent to move to consolidate the cases in D.D.C. should the transfer be granted; in fact, parties in *CREW* and *CBD* have already filed notices that those cases are related to each other.

### III.  LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). If the action could have been brought in the target district, *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960), courts then weigh a variety of factors including:

> (1) where the relevant agreements were negotiated and executed, (2) which state is most familiar with governing law, (3) the plaintiff's choice of forum, (4) the parties' contacts with each forum, (5) the parties' contacts with each forum that are related to the cause of action, (6) the relative costs of litigating in each forum, (7) the

ORDER GRANTING MOTION TO TRANSFER
CASE NO. 19-cv-04242-RS

3

>availability of compulsory process in each forum, and (8) access to evidence in each forum.

*See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). Consistent with the above, courts in this district have articulated additional factors such as feasibility of consolidation with other claims, local interest in the controversy, and relative court congestion. *See Vu v. Ortho-McNeil Pharmaceutical, Inc.*, 602 F.Supp.2d 1151, 1156 (N.D. Cal. 2009). Whether to transfer is generally left to the discretion of the district court. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

## IV.  DISCUSSION

The parties do not dispute that both the Northern District of California and the District of Columbia are proper venues for this case. 28 U.S.C. § 1391(e)(1). Thus, whether to transfer the case to D.D.C. is a question of convenience, left to the discretion of the transferor court and to be evaluated holistically using *Jones* and other factors.

**A.  Factors Favoring Transfer**

By far the strongest argument in favor of transfer is the similarity to and possibility of consolidation with *CREW* and *CBD*. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). That the three are not certain to be consolidated in D.D.C. is not important given the significant factual overlap. *See A.J. Industries, Inc. v. U.S. Dist. Court for Central Dist. Of California*, 503 F.2d 384, 389 (9th Cir. 1974) ("To hold that the pendency of an action between the parties in another district could not be considered unless the action could be consolidated would unnecessarily limit the facts that should be considered…and would require a good deal of speculation by the transferor court.").

It is true that the three cases do not make exactly the same claims or allege exactly the same facts. *CBD*, for example, challenges other FOIA directives besides the Rule, while the

Order Granting Motion to Transfer
Case No. 19-cv-04242-RS
4

present case and *CREW* do not. It is equally true, however, that the factual and legal overlap between the cases is significant—as the parties in *CREW* and *CBD* have already recognized by filing statements of related cases. All three cases are challenging the process by which the Rule was promulgated, as well as some of the substantives changes it makes, under various provisions of the APA and the FOIA. The courts handling each of the cases will thus need to apply the same statutes to the same Administrative Record and answer many of the same questions: Do either of the notice-and-comment exceptions apply? Is the Rule arbitrary and capricious? Is the centralization requirement unlawful? At this early stage in the litigation, it is still unclear how each of those questions would come out, and therefore whether each court would answer those questions the same way. The risk of inconsistent judgments is high. A situation where the Northern District of California finds the Rule acceptable under the APA and the FOIA and the District of Columbia does not, or vice versa, would leave the parties without real guidance about how to act. This is precisely the type of situation § 1404(a) was designed to prevent. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976).

Another factor favoring transfer, albeit less strongly, is relative court congestion. The statistics provided by the parties demonstrate D.D.C. is less congested than the Northern District of California by almost every measure. Each party accuses the other of cherry-picking statistics, but only two presented metrics suggest D.D.C. is a more congested forum. By contrast, more than a dozen metrics suggest that honor belongs to the Northern District of California. The metrics suggesting this district is more congested are also more relevant to this case; the number of cases pending, cases per judgeship, and median time from filing to disposition are all higher in this district. Meanwhile, one of the two metrics suggesting D.D.C. is more congested—the time from filing to trial—is not particularly helpful as the resolution of this case is likely to be by motion practice.

**B. Factors Disfavoring Transfer**

Plaintiffs' strongest argument for keeping the case in this district is, somewhat circuitously, that they would prefer to litigate here. That concern is not insignificant, especially

given that both EcoRights and OCE are headquartered in this district. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). That deference, however, is somewhat diminished given that the facts giving rise to the litigation did not occur in this district. *See Park v. Dole Fresh Vegetables, Inc.*, 964 F.Supp.2d 1088, 1094 (N.D. Cal. 2013). The Rule was promulgated out of the EPA's Washington, DC headquarters. *See Gulf Restoration Network v. Jewell*, 87 F.Supp.3d 303, 313 (D.D.C. 2015) ("In APA cases, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." (internal citation and quotations omitted)).

Plaintiffs cannot and do not claim that the nationally applicable Rule, promulgated by the EPA in Washington, DC, has any special effect in this district; citizens in every district are equally affected by it. *Cf. Shawnee Tribe v. United States*, 298 F.Supp.2d 21, 26 (D.D.C. 2002) (transferring case regarding agency determination about land in Kansas to the District of Kansas because that district had a particular interest in the matter). Plaintiffs have more significant contacts with this district than with D.D.C., and as a national organization, the EPA has contacts with every district—but neither party has any contacts with this district *related* to the facts underlying this case. Put differently, this is not a "local" controversy; this district does not have any special interest in the outcome of this litigation. While plaintiffs argue that their home district has a particular interest in ensuring its citizens' rights are vindicated, a nationally applicable rule does not affect citizens of the Northern District of California any more significantly than it affects citizens of any other district.[1]

---

[1] Plaintiffs argue that two additional factors further favor their choice of forum. First, plaintiffs state that FOIA's special venue provision provides additional weight to their choice. The EPA, however, correctly points out that 28 U.S.C. § 1391, not FOIA, is the basis for venue in this case. The FOIA venue provision only applies to cases where the opposing party is attempting to get an agency to produce records, i.e. a FOIA request, which is not the issue in this case. 5 U.S.C. § 552(a)(4)(B). For plaintiffs to assert venue under 28 U.S.C. § 1391 in their complaint, but invoke the FOIA venue provision here, is, to put it lightly, inconsistent. Second, plaintiffs lament that they will have to amend and re-file their Motion for Summary Judgment if the case is transferred. That Motion, however, was filed extraordinarily early—before the complaint had even been answered. Furthermore, plaintiffs had notice of the EPA's intention to move to transfer this case to

ORDER GRANTING MOTION TO TRANSFER
CASE NO. 19-cv-04242-RS

Another consideration disfavoring transfer, albeit much less weightily than plaintiffs suggest, is the ease of access to sources of proof. The parties seem to agree that the Administrative Record and the relevant statutory provisions, all of which are available electronically, are the only evidence that will be needed to decide this case. Plaintiffs name two possible witnesses, whose declarations are attached to their Motion for Summary Judgment, for whom it would be more convenient to testify in this district as they are at home here. The preferences of those witnesses, however, should be given limited weight for two reasons. First, the witnesses are an EcoRights Board Member and an OCE Director; they are effectively both parties and witnesses; to the extent their preferences are already reflected by the plaintiffs' choice of forum, considered above, and convenience to the parties, considered below, they should not be factored in again. Second, both parties acknowledge that this case will likely be resolved by a dispositive motion, rendering it unlikely that these witnesses would ever need to appear in court.

### C. Neutral Factors

The parties discuss a number of additional factors. None of those factors significantly influence the transfer determination, but they are considered briefly here. First, as to the districts' relative familiarity with the law, it is true that D.D.C. sees more administrative law cases than other districts, and thus may be more familiar with it. It is equally true that the degree to which D.D.C. is more familiar with administrative law than other federal courts is significantly lesser than the degree to which a federal court is more familiar with the law of its situs than are out-of-state federal courts—making the degree to which this factor favors transfer negligible. Second, as to convenience of the parties,[2] plaintiffs are "at home" in this district, but the Civil Division of the Department of Justice, which is litigating this case, is "at home" in D.D.C. The parties both raise the point that the other party has a presence in their home district, which does not diminish the fact

---

D.D.C. before they filed for summary judgment. Neither argument therefore carries much weight.

[2] This factor is not to be conflated with the preferences of the plaintiffs or the convenience of the witnesses, which are discussed above.

that it is more convenient to litigate in one's home district but does evince that neither party can claim it would be impossible to litigate in the other's choice forum. There is simply no avoiding the fact that one party will have to bear the costs of attorney travel, *pro hac vice* admission, and the like.[3] This factor is thus, also, neutral. Finally, two of the *Jones* factors are entirely irrelevant to this case. There are no relevant "agreements" at issue, and the same compulsory process is available in this district and in D.D.C.

Evaluating all the factors holistically, then, only two meaningfully favor transfer and two disfavor it. Of these, court congestion (favors transfer) and convenience of witnesses (disfavors transfer) essentially balance each other out in degree. The strongest argument disfavoring transfer—the plaintiffs' choice of forum—is minimized in that the facts underlying the case did not arise in this district; put differently, this district has no special interest in the litigation. The strongest argument favoring transfer—the possibility of consolidation with *CREW* and *CBD*—is thus significant enough to overcome that weakened presumption, given the risk of not only inefficient litigation but also inconsistent judgments.[4]

## V. CONCLUSION

The factors balanced above demonstrate that, while EcoRights and OCE reasonably brought their lawsuit in the Northern District of California, the EPA has now presented more compelling reasons for the case to be transferred. As explained above, this case is therefore transferred to the District Court for the District of Columbia. It is left to the parties and the Judges of that district to determine whether this case should be consolidated with *CREW* and/or *CBD*, and

---

[3] Plaintiffs argue that the costs of *pro hac vice* admission in D.D.C. should weigh against transfer. That argument is unpersuasive given that one of plaintiffs' attorneys, who had to seek *pro hac vice* admission in this district, is a member of the D.D.C. bar.

[4] Plaintiffs' opposition and the EPA's reply to the Motion to Transfer both address the "first to file" doctrine as a basis for transfer (or non-transfer) of the case. However, the Motion is based in § 1404(a) and not that doctrine. The arguments relating to that doctrine are therefore not addressed here, except to say that: (1) the doctrine is not particularly informative in this case given that the three complaints were filed within one day of each other, but (2) if anything, the doctrine, like § 1404(a), favors transfer because the *CREW* complaint was the first to be filed.

to reinstate deadlines regarding the answer and pending Motion for Summary Judgment.[5]

**IT IS SO ORDERED**.

Dated: October 18, 2019

_____
RICHARD SEEBORG
United States District Judge

---

[5] The EPA moved, if its request to transfer the case was not granted, to stay this proceeding while *CREW* and *CBD* were ongoing in D.D.C. As the motion to transfer is granted, however, the motion to stay need not be addressed.